We'll begin with the Santiago matter and accordingly hear first from the government and the person of Mr. Coyne. Good morning. May it please the court, Mark Coyne for the United States. Chief Judge Smith, I reserve two minutes for rebuttal. Go ahead. Historical and modified categorical approaches require us to ignore the way in which a crime was committed and consider only that crime's elements. That forces judges to close their eyes to what is obvious, which can produce puzzling results. But not always, and not here, as the Supreme Court's recent case law shows. The central question in this appeal, and an important question in Harris, is this. Does reckless conduct satisfy the identical elements clauses in the guidelines definition of crime of violence, and the Armed Career Criminal Acts definition of violent felony, along with the similar elements clauses in sections 16 and 924C of Title 18? The answer to that question, as five other circuits have now held, is yes, in light of Wazin and other recent Supreme Court precedent. All of these clauses require a crime or offense that, quote, has as an element the use, attempted use, or threatened use of physical force. In a line of precedent starting in 1992 with Parson, and continuing in Tran, Popol, Singh, Otero, and other cases, this court held that reckless conduct couldn't satisfy these elements clauses. And this court wasn't alone. By 2015, virtually every other circuit agreed. But none of that precedent had the benefit of Wazin. There, the Supreme Court interpreted another definition of crime of violence, one that requires an offense that, quote, has as an element the use or attempted use of physical force or the threatened use of a deadly weapon. And that definition requires a qualifying offense to have a human victim. In that context, the court held that use of force plainly means volitional employment of force. And that volitional employment of force plainly includes reckless causation of bodily injury. Wazin held that the key distinction in this area is between volitional conduct and accidental or negligent conduct. Volitional conduct includes intentional, knowing, and reckless causation of bodily injury. And Wazin held all three count as the use of force. But accidental or negligent causation of bodily injury is not volitional conduct under Wazin and never counts as the use of force. Neither do strict liability offenses. As Wazin held, quote, the word use does not demand that the person applying force have the purpose or practical certainty that it will cause harm as compared with the understanding that it is substantially likely to do so. Or otherwise said, that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct. In light of Wazin, the 5th, 6th, 8th, 10th, and DC circuits all have held that reckless causation of bodily injury satisfies one or more of the elements clauses in the guidelines in Title 18. Four of those circuits overruled their precedent to do so. So should this court. The meaning of those elements clauses is just as plain as the meaning of the one in Wazin. And nothing about their structure, history, and purpose undercuts their plain meaning. Because use means use, this court should apply Wazin to the elements clauses of the guidelines, the ACCA, and sections 16 and 924C. When a defendant recklessly causes bodily injury, he has used violent force. That is force capable of causing pain or injury or overcoming resistance. Under Stoeckling, that's the force required under the elements clauses in play here and under sections 16 and 924C. Not extending Wazin to these clauses would make no sense. Wazin's definition of use meant a defendant with a misdemeanor conviction for recklessly assaulting a family member lost his Second Amendment rights. It also meant if later caught with a gun, he could be convicted of a felony permitting a 10-year sentence. So there should be no hurdle in applying the same definition of use to the other elements clauses, which target equally, if not more, culpable defendants, those who deliberately engage in potentially violent behavior. Furthermore, not doing so would lead to absurd results and seriously undercut the guidelines, the ACCA, and section 924C. If reckless conduct can't satisfy their elements clauses, then a host of violent felonies, including many kinds of aggravated assault, robbery, and even federal second-degree murder, according to the Ninth Circuit, wouldn't qualify as crimes of violence or violent felonies. And that would contravene Congress's and the Sentencing Commission's manifest intent. Mr. Coyne, I understand Santiago to be arguing that the context of Wazin is critical and even determinative. In other words, that it applies specifically to misdemeanor crimes of domestic violence. So why shouldn't we view Wazin's definition of use of force as limited in its application specifically to that area? And particularly in light of a footnote, footnote 4 in the Wazin opinion, which would seem to leave the question open. I think first and foremost, because the court held, the first part of the Wazin decision held that as a matter of plain meaning, the word use encompasses reckless causation of bodily injury. And as the Supreme Court has held time and again, when the meaning of a provision is clear, that's where the analysis ends. On top of that, the context, the misdemeanor crime of violence context is not so significant a difference here. That definition, like the definitions at play here, require there being a human victim. And on top of that, when one goes back to the legislative history associated with the adoption of Section 16, Congress, and I believe it's Senate Report 85-225, but it's cited in the briefs. That Senate report noted that the elements clause of Section 16A, what became codified as 16A, was always intended to include attempts and attempted assaults and threats to commit assault. Are you faced with that answer? I am, Your Honor. Your definition, your response to Chief Judge Smith, as well as when you were giving the opening statement and you talked about identical language and then you flipped to similar language. And in your entire presentation to us, you left out the limiting phrase, use of force against the person of another. And as I understand it, you're saying that all that means is that there has to be a human victim. I'm hard put to come up with a crime that would fall into this kind of category that doesn't have a human victim. We're not talking about those states that have burglaries of automobiles or that kind of thing. By definition, you're going to have a human victim. So I don't know what that means. And it also seems you're ignoring footnote four that Chief Judge Smith alluded to, and you're ignoring the language in Lea Cal. And I'm troubled by your presentation because it really doesn't seem to hone in on what the problem is here, where you're taking a mental state which involves criminal negligence, basically, and rising that up to where someone's getting a 15-year enhanced penalty because they were reckless at some point. Your Honor, I have several points to make in response to that question. First, the mental state here is not criminal negligence. The Supreme Court has made clear that recklessness requires a much more culpable mental state than mere negligence. Wazin itself said that. He said mere negligence, but I'm talking criminal. Let's assume you're right. Go ahead. Recklessness is a different mental state requirement. It's the mental state. Because of the extreme indifference to language. Well, there's also extreme indifference forms of recklessness for, say, in the malice of fourth-definition of second-degree murder and even in the first-definition, even in first-degree murder under federal law. But the restrictive clause we're talking about, no doubt, the First Circuit pointed to the presence of that restrictive clause against the person of another in Section 16. And the First Circuit, even in the Wazin case that ultimately found its way to the Supreme Court, noted the presence of that restrictive clause in Section 16A as distinguishing Section 16A from the definition of misdemeanor crime or violence. But what I find most telling about that is the Supreme Court, in affirming the First Circuit's judgment, nowhere in its opinion placed weight on the absence of the restrictive clause. What about the entire discussion of the purpose behind including a misdemeanor arising in the context of domestic violence? Well, there's a contextual point. But, again, we have plain language. And the first and foremost principle of statutory, for that matter, guidelines construction is, if the Supreme Court has said that a particular term has a plain meaning, that's where the analysis should end unless there's compelling evidence. But in the account, and I think also in Wazin, the Court specifically referred to the context of the language. It didn't refer to corners. And it did reserve in footnote four, just like in Castleman, Castleman reserved in, I believe, footnote eight, whether recklessly committed offenses could satisfy even the definition of misdemeanor crime or violence. That didn't stop the Court from holding six justices signed on to Justice Kagan's opinion that recklessly committed offenses do satisfy the definition of misdemeanor crime or violence. But I also want to add, getting back to- Under which statute? Under the misdemeanor crime or violence definition. But the Court, in interpreting- Oh, if that's so obvious. And in your presentation, you said that to hold otherwise would lead to an absurd result. But, of course, Wazin didn't change the language of the statutes. And prior to that, as you acknowledged in your presentation, virtually every circuit in the country said recklessness doesn't count. So are you to have us believe that the entire appellate judiciary of the United States was driving an absurd result before? Or is this language less clear than you're making it out to be? I think the language is as clear as the Supreme Court has already made it out to be. So everybody had it wrong, just like absurdly wrong before. Well, absurdly wrong in the context of its ultimate application. So, for example, if second-degree murder under federal law cannot qualify as a crime of violence under Section 924C's elements clause, I submit that is an absurd result. The Ninth Circuit just held that. How is it- Let me ask it this way. In Wazin, the Court went out of its way to talk about what would happen to the Lautenberg Amendment across the country if it didn't hold the way it held. And in Stokeling, the Court seemed to do the same thing with respect to ACCA. Look to the purpose of the statute. Should we be doing that here? And if we do that here, what do you make of Judge Becker's comment in Parsons that says, well, ACCA's meant to get at career offenders, and, of course, nobody makes a career out of recklessness. If we look to purpose, does that help you or hurt you? I think you look to purpose only to see, again, plain language is first and foremost, and only if the purpose is plainly contradictory to the plain language would you maybe, maybe begin to sort of read ambiguity into this. But with respect to Judge- If the Sixth Circuit has two panels with superb judges, Judges Sutton and Kethledge, going at each other, hammering tongs and saying to the other, you're completely wrong, should that imply something about ambiguity, that maybe this isn't as clear as you're saying it is? I think a difference of opinion among judges, even as well regarded as Judges Kethledge and Sutton are, doesn't mean that the phrasing question is ambiguous. Or the term is ambiguous. What about the rule of lenity? So you have a split in the circuits, and you might infer by the fact that you're arguing in bond court there may be a difference of opinion up here. So what, if any, application does the rule of lenity have when you have an ambiguity in the statute? Well, there would be applicability if there was ambiguity, but there is no ambiguity. There's no ambiguity. The split in the circuits means there's no ambiguity. A split in the circuits by itself does not generate ambiguity sufficient to trigger the rule of lenity. What would? It's a rule of last resort. What would trigger the rule of lenity? When all other traditional principles of statutory construction, starting with plain meaning, then going to text, history, and purpose, still leave the court hopelessly lost or faced with two or more reasonable interpretations of the statute, then you can resort to the rule of lenity. So are the circuits that don't agree with your position unreasonable? They are wrong. So the First Circuit in Bennett is, in that long opinion, is Judge Barrow is completely wrong, right? They're wrong. So is, and so with all due respect, is Judge Kethledge. And I might add that that battle within the Second Circuit is continuing, and the Second, sorry, the Sixth Circuit is continuing, and the Sixth Circuit has denied a petition for re-hearing in Bank, which prompted a, we'll call it a dissental, but a dissenting opinion from the denial of re-hearing in Bank by Judge Kethledge, signed by only three other judges, and there are 16 active judges on that circuit. All right. Thank you, Mr. Coyne. We'll have you back on the floor. Thank you. And we'll hear from Ms. Freeman. We'll have five uninterrupted minutes, Ms. Freeman. May it please the Court. My name is Renee Pietropalo on behalf of the Federal Public and Community Defender offices of the Third Circuit supporting Mr. Santiago. The question presented is whether a defendant uses physical force against the person of another within the meaning of the Sentencing Guidelines and Armed Career Criminal Act when the defendant is indifferent, which is to say reckless, as to his use of force. Since the 1992 Parsons decision, every time this Court has interpreted this language, it has said no, and it should continue to say no here. This is a straightforward case of statutory interpretation. We start with the text of the statute, which requires as an element the use, attempted use, or threatened use of physical force against the person of another. The Supreme Court in Lea Cal, interpreting nearly identical statutory language in 18 U.S.C. Section 16, explained that when construing a statute featuring as elastic a word as use, which does not connote any particular mens rea, courts must consider the text in its context in light of the terms surrounding it. The Lea Cal Court identified as the critical and key language that restrictive phrase requiring that the use of physical force be against the person of another. And this Court in Oyobanji called that restrictive phrase the cornerstone of Lea Cal and held, again, along with every other circuit to reach the question, that the use of physical force against the person of another requires intentional employment of force. Recklessness is insufficient. The government asked this Court to abandon 25-plus years of authority holding that reckless offenses, like the reckless driving causing injury here, are not crimes of violence under the force clause, relying on voisine, a case with a different statute, different language, and a very different statutory purpose. Voisine is not at odds with Lea Cal or with this Court's post-Lea Cal authority. Lea Cal interpreted Section 16's definition of crime of violence, which was enacted as part of the Comprehensive Crime Control Act of 1994. The guidelines incorporated that definition. Voisine was construing the Misdemeanor Crime of Domestic Violence statute. When Congress enacted that statute 12 years after the 1984 crime bill, it chose not to incorporate Section 16's definition into 922G9. In its brief to the Supreme Court in Voisine, the Solicitor General viewed this as evidence that Congress intended these different provisions to be interpreted differently. In that same brief, the Solicitor General stressed the absence of that critical, restrictive phrase, as well as the different statutory purposes, to urge the Court to apply different meanings to the different phrases and the different statutes. 922G9 was enacted to bar domestic abusers convicted of garden variety assault and battery misdemeanors, just like those convicted of felonies from owning guns. A majority of the states defined misdemeanor assaults and batteries to include reckless offenses. It was given that purpose that the Voisine majority believed it made sense to conclude that when Congress enacted this statute with this elastic language and while declining to incorporate Section 16's definition, that it meant to sweep in reckless offenses. Here we are not talking about barring domestic abusers from possessing firearms in the same way federal law already bars addicts, those subject to restraining orders, from possessing firearms. We're talking about recidivist sentencing statutes that for queer offenders trigger sentences at or near the statutory max. In the criminal context, raise the mandatory minimums from 0 to 15 and the statutory maximums from 10 years to life. What this government is asking the Court to do is to create a carve-out for the use of force variation of the element of force clause, making it the lone provision in the crime of violence definition to encompass recklessness. And I'll point the Court to the 28-J letter filed by Mr. Santiago, May 1, 2019, which explains every iteration of the crime of violence definition requires intent, be it attempted and threatened use of force, the enumerated offenses, the commentary offenses, and the now broader but void residual clause. The use of force variation must be interpreted consistently with its neighboring provisions to require intentionality. Finally, the rule of lenity. Whatever side of the question you come down on, it's simply not credible to dispute that the question is at least eminently debatable, and that's enough, according to Judge Justice Scalia in Smith v. United States, to require a finding from Mr. Santiago. It's the text, the narrower and harsher purpose of the Armed Career Criminal Act and the long history of excluding reckless offenses that all counsel against adopting a broad meaning of the force clause within the Armed Career Criminal Act and guidelines. Ms. Pietropalo, my apologies for misidentifying you at the outset. Our rather unusual format today caused me to read downward on our minutes rather than crossword, and I certainly know you. Question about some language that the amicus have used. The argument that the circuits that have extended Boisean to ACCA and to the guidelines context, the argument that has been advanced is that they superficially, that's the word, rely or have relied on linguistic similarities, language similarities between those statutes and the domestic violence statute. But Congress' choice of similar language often compels us to conclude that they intended that statutes should be interpreted similarly. And here, of course, the Lautenberg Amendment was drafted with a, at least presumably with a view toward the existence already of ACCA and the guidelines. So why is that a superficial approach to have relied upon those linguistic similarities? Well, we know that when the Lautenberg Amendment was enacted, that Congress chose not to incorporate Section 16's definition, that established definition of crime and violence that already existed in the Armed Career Criminal Act and in the guidelines and in other statutes as well. And it's more the analysis of the courts, the adverse authority that, maybe superficial is too harsh of a word, but they don't grapple with that critical, restrictive language that exists in the ACCA and doesn't exist in the misdemeanor crime of domestic violence context. And the hate court, which talks about and expressly depends on this idea that there's a victim for misdemeanor crimes of domestic violence. That case actually gets it wrong. The statute has as an element, the misdemeanor crime of domestic violence statute, the use or attempted use of physical force or threatened use of a deadly weapon committed by a person with specified relationship to the victim. Judge Kethledge, dissenting from the denial of rehearing in Walker, correctly said that the phrase use of physical force against the person of another is not equivalent to the use of physical force committed by a person with a specified relationship. As a matter of fact, you can use force and have a domestic violence victim and yet not use force against the victim. And the Boisin court's own example illustrates that. It's the plate throwing against the wall that recklessly causes injury. That's not a use of force against the person, and yet there's a domestic violence victim. And so it satisfies that statute. So before Boisin was decided, was the domestic violence statute ambiguous? Or was it clear? The court determined in Boisin that it wasn't ambiguous by looking at the text of the statute, which was different and only had that elastic word use. It looked at the purpose of the statute, which was to bar guns from domestic abusers convicted of misdemeanor offenses. And it was really all about the purpose that allowed the court to adopt this broad reading of the statute to sweep in reckless offenses. So if we follow that same recipe here, then your conclusion would be that this statute couldn't be ambiguous? Well, it's our position that the statutory language, the text, the history, all counsel in favor of our interpretation.  Which, under the rule of lenity, you should find in Mr. Santiago's favor. Again, in Boisin, it was really the purpose of the statute that drove everything else. If that's true, doesn't that hurt you? Because in Stokely, the court looked at ACCA and said, we can't really adopt the defendant's position here, because if we did that, we'd be wiping out 35, 38 states. I mean, ACCA just wouldn't be applicable in the most serious cases across the majority of the jurisdictions of the country. It was Boisin flipped the other way. So if we take your approach, aren't we in the position of saying, as the government is, well, ACCA's got to mean something in these contexts. So if you pay attention to the purpose of the statute, you've got a fine for the government. Actually, continuing to exclude reckless offenses, as you always have, won't make the Armed Criminal Act inapplicable anywhere. That was the driving force of Boisin. Not that one predicate or another wouldn't qualify. That isn't how Justice Thomas and the majority saw it in Stokely, is it? That was one of the explicit rationales in Stokely was, we can't accept the defense position, because it would undermine ACCA across a great swath of the country. That was explicit in Stokely, was it not? Actually... I mean, I can quote it for you if you want. If you look at page 552, we have repeatedly declined to construe the statute in a way that would render it inapplicable in many states. Right. I don't think that that's actually right, though, that it would render the statute, the Armed Criminal Act, inapplicable in many states. You may not think that, but evidently the Supreme Court did think that, and that's why Justice Thomas said it. So if that's the approach we're to take, how do you get around the most recent Supreme Court authority on this, this very year, the Supreme Court taking that task? The purpose of the statute is different than the purpose of misdemeanor crime of the domestic violence statute. Begay instructs, and Judge Becker's opinion, and Becker instructs that the purpose has always been to get at those intentional crimes, the people who are making a career out of crime, and it's doubtful, as you said, that... I thought Judge Becker's comment in Parson was beautifully framed, as he was wont to do, but that was in 1992, and in 2019, we have a majority of the Supreme Court saying what seems to be something different. How do we address that? In Becker and Begay, which is more recent, and also in Castleman and the Stokeling dissent, the Court continues to look to Begay and its articulation of the purpose of the Armed Criminal Act to get at... The Stokeling dissent, though, right? But the Castleman majority said the same thing. They said, we hesitate to apply the Armed Criminal Act to crimes which, though dangerous, are not typically committed by those we label armed career criminals. So the statute remains the same, and if you're interpreting our statute consistent with its purpose, and in light of the surrounding terms, that restrictive phrase, that counsels in favor of adopting Mr. Santiago's position. What do we do with the fact that, in addition to that statement in Stokeling, the court in Foisine said that reckless conduct entailed the active employment of force. We, in other circuits in Leocal, we focused on a language of closely related active violence to exclude recklessness, but the court seems to be deliberately choosing to point out,  Is that also telling us that we need to revisit that understanding of Leocal? So there's two different responses to that. The first is the whole focus of the court on purposeful, I think is kind of a distraction. We know from the model penal code section 2.02 subsection 1, all criminal conduct must be purposeful, and then you need an actus reus and a mens reus. So if purposeful, volitional, I should have said volitional, were the place that we would draw the line, then Leocal couldn't have come out the way that it did. You had a volitional act of driving, but committed at best with recklessness, and that didn't count. But in terms of the reckless, this idea that somehow reckless offenses are now excluded, again, I get back to the purpose of the statute. It was the elastic word use, standing alone, that allowed the court to say we need to capture recklessness in order to effectuate the purpose of the statute. It's necessary to avoid making 922G inoperative in a majority of the states, so we need to capture recklessness. But the opposite purpose is in play. We have narrower text, and then we have a narrower force clause, which counsels against sweeping in reckless offenses. Let me ask you this question. Let me ask you this question going back to the rule of lenity, because I didn't understand something in response to my colleague. It sounds like what you said is the rule of lenity is employed when there's a disagreement among the parties, and it's really obviously supposed to be ambiguity. You want to win, they want to win. That doesn't mean we employ the rule of lenity. So what's the ambiguity that would lead us to the rule of lenity? It's not necessarily disagreement. That can be evidence of ambiguity, but ambiguity is resorted to when the text, the purpose of the statute, the history lead us to not be sure what Congress intended. And in the misdemeanor crime of violence definition, all of those things counseled in favor of sweeping and recklessness. But in the armchair criminal context, you have a long history of not including reckless offenses. You have a very different text that includes that restrictive phrase. You have, again, the narrow and harsher purpose of the armchair criminal act, and all of that counsels against sweeping and reckless offenses, because when there's doubt, court should avoid interpreting a statute in a way that would double, as in the career offender context, a defendant's sentence. Thank you, Ms. Pietro. Mr. Coyne, you have rebuttal. Thank you, Your Honor. I'll be very brief. With respect to the rule of lenity, there was a circuit split in Boisin itself, and Boisin in a footnote said there was no place for the rule of lenity because the meaning of the term use of physical force was plain. So a circuit split isn't sufficient. I'd also commend the court to Judge Kavanaugh's, then-Judge Kavanaugh's opinion for the District of Columbia Circuit in Haight, which was also joined by Chief Judge Garland and Judge Srinivasan. That opinion rejected the very argument that hinges that my good friend here is making, and that the First Circuit and the Harper panel adopted that the restrictive clause, the presence of that clause, meant necessarily that there needed to be more than recklessness. And I might add— Mr. Coyne, you were pressed in your previous argument on your use of the characterization of some circuit decisions having been led to absurd results. Although you didn't say it, were you suggesting that that was really a function of— an ultimate function of the application of the categorical approach here, which, of course, the government relentlessly, and I won't say incorrectly, criticized in its various briefings? We are, of course, bound by the categorical approach and the modified categorical approach, as this Court is, and we're not asking the Court to disregard that. My question was, is that what you were suggesting was behind the absurdity of the results? Well, the results can be absurd, but we're not saying that the reasoning of Judge Becker, a towering presence in this Court and still a presence in this courtroom today, that his reasoning was absurd. Not at all. It was just mistaken because he was making a fundamental assumption that reckless employment of force couldn't qualify as volitional employment of force, and we now know from Boisin that it does. Is there a possible middle ground? If you look at the Eighth Circuit decisions in Fogg and Fields, one in 16 and one in 17, in Fogg it was a drive-by shooting, so it was reckless and dangerous with a gun. If you have knowledge or volition with respect to your conduct, but you're reckless as to the consequences, that might be one thing in your favor, versus pure recklessness, which is what Fields had, which was the reckless driving. Is there a way to cut the mustard? You may, of course, answer. Thank you, Your Honor. Judge Ambrose, only one circuit maintains that distinction, and that's the Eighth Circuit. The Tenth Circuit rejected it. Might they not be on the right path? We don't think so because reckless causation of bodily injury counts as the volitional use of force regardless of the implement that is used to cause that bodily injury, whether it's a bat, a thrown plate, a slammed door, a knife, a gun, or even a car. The key is whether the defendant in question was deliberately employing force that was capable of causing pain or injury and did so in a manner that was recklessly disregarded the consequences of his action. For all these reasons, we ask that the judgment below be vacated, and this Court remand for resentencing in Santiago. Thank you. Thank you very much, Mr. Coyne. Thank you.